UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEFFREY V. LUCKERN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 07-12158-JLT |
| | * | |
| SUFFOLK COUNTY SHERIFF'S DEPT., | * | |
| ANDREA CABRAL, Personally and as | * | |
| Sheriff of Suffolk County, | * | |
| GERARD HORGAN, Personally and as | * | |
| Supt. Of the S.C.H.O.C., | * | |
| CORRECTIONAL MEDICAL | * | |
| SERVICES, INC., PRISON HEALTH | * | |
| SERVICES, INC., ALBERT V. FRANCHI, | * | |
| Personally and as an Orthopedic at | * | |
| S.C.H.O.C., and THOMAS A. | * | |
| GROBLEWSKI, Personally and as a | * | |
| Doctor at S.C.H.O.C., | * | |
| | | |
| Defendants. | | |

MEMORANDUM

March 22, 2010

TAURO, J.

I.   Introduction

On November 15, 2007, Plaintiff Jeffrey V. Luckern instituted this action, pro se, alleging numerous violations of the federal and state constitutions, as well as state tort claims and breach of contract. On November 12, 2009, this court allowed Defendants' Cabral, Horgan, and SCSD Motion for Reconsideration of Defendants' Motion to Dismiss [#54, #30] and Defendant Correctional Medical Services, Inc.'s and Albert V. Franchi, M.D.'s Motion to Dismiss Plaintiff's Complaint [#33].

The two remaining defendants in this action now seek an order of summary judgment. For the following reasons, Defendants Prison Health Services, Inc., and Dr. Thomas Groblewski's Motion for Summary Judgment [#70] is ALLOWED.

II      Background

    A.      Procedural Background

On February 11, 2008, Defendants Cabral, Horgan, and Suffolk County Sheriff's Department filed a motion to dismiss for failure to state a claim upon which relief can be granted. On February 20, 2008 Defendants Correctional Medical Services and Dr. Franchi also filed a motion to dismiss. On June 23, 2008, this court referred this action to a medical malpractice tribunal on motion of Defendants Prison Health Services ("PHS"), Dr. Growblewski, Correctional Medical Services, and Dr. Franchi.

Pending the outcome of the medical malpractice tribunal, this court stayed the case and denied Defendants motions to dismiss without prejudice to refiling. On November 17, 2008, the medical malpractice tribunal dismissed all claims without prejudice for failure to prosecute. In an order dated June 23, 2008, this court dismissed count four, alleging negligence and medical malpractice, as to all Defendants.

Defendants Cabral, Horgan, Suffolk County Sheriff's Department, Correctional Medical Services, and Dr. Franchi subsequently renewed their motions to dismiss the complaint for failure to state a claim upon which relief can be granted. This court allowed the motions in an Order [#74] dated November 12, 2009.

On November 3, 2009, Defendants PHS and Dr. Growblewski, the two remaining defendants in this action, filed a motion for summary judgment, to which Plaintiff was given sixty

days to respond.  Plaintiff having failed to respond in a timely manner, this court finds it appropriate to address Defendants motion for summary judgment on the merits.

Plaintiff's complaint asserts seven claims against Defendants.  Count one alleges violations of 42 U.S.C. § 1983 ("section 1983").  Count two alleges violations of "Articles 11, 12 and 26 of the Massachusetts Declaration of Rights".  Count three asserts a common law claim for intentional infliction of emotional distress.  Count four alleges a common law claim for reckless and negligent medical care.  Count five asserts a breach of contract.  In light of plaintiff's pro se status, this court construes counts three, four and five as claims arising under Massachusetts common law.

Count six, captioned "Deliberate Indifference to Medical Needs," alleges violations of the Eighth and Fourteenth Amendments, Articles 12 and 26 of the Massachusetts Declaration of Rights, "as well as statutory and regulatory rights secured to [Plaintiff]."  This court construes this count as raising causes of action under section 1983 and Articles 12 and 26 of the Massachusetts Declaration of Rights.

Similarly, this court interprets count seven, captioned "Medical Malpractice, Cruel and Unusual Punishment," as alleging a cause of action under article 26 of the Massachusetts Declaration of Rights and section 1983.

From the face of the complaint, this court finds that counts six and seven are duplicative of counts one, two and four and will not, therefore, address counts six and seven independently. Accordingly, this court addresses only counts one, two, three, and five below, as no other claims remain to be decided.

B.     Factual Background[1]

After violating the terms of his probation, Paintiff was incarcerated at the Suffolk County House of Correction on January 30, 2006. On February 28, 2006, Plaintiff was seen by Dr. Groblewski, the Director of Medical Services for PHS at all relevant times, for degenerative joint disease and bilateral arthritis in his hips. During this appointment, Plaintiff stated that he was due to be released from prison, and that he had a scheduled orthopedic appointment concerning hip replacement surgery at Boston Medical Center (BMC). He indicated that he wanted to keep that appointment instead of going to the Lemuel Shattuck Hospital to be evaluated. Accordingly, Dr. Groblewski prescribed Plaintiff Motrin for pain and told him to follow- up with BMC orthopedics upon his release on March 16, 2006.

Plaintiff again returned to the custody of the House of Correction on May 10, 2006 without having had hip replacement surgery. During an appointment with Dr. Groblewski on May 25, 2006, Plaintiff signed a refusal of treatment form, declining to participate in an evaluation of degenerative changes in his hip at the Lemuel Shattuck Hospital. Plaintiff stated that he preferred to reschedule an appointment at the BMC with his personal physician. Dr. Groblewski continued him on Motrin and Tylenol but discontinued Plaintiff's prescription for Ultram because Dr. Groblewski understood that Plaintiff was going to be transferred to Brook House, a pre-release facility where Ultram is not allowed.

---

[1] This court presents these facts in the light most favorable to Plaintiff, the party that does not prevail on summary judgment. See Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005) ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof."). Because Plaintiff did not oppose Defendants' Motion for Summary Judgment, this court presents the facts as they are set forth in the Complaint and the Affidavit of Dr. Thomas Groblewski, and exhibits thereto, which were filed in support of Defendants' Motion.

Plaintiff was re-incarcerated at the Suffolk County House of Correction on November 28, 2006. On December 6, 2006, Plaintiff informed the physician's assistant that he again did not have surgery during his release because he missed his pre-operative appointments. Nonetheless, on December 21, 2006, Plaintiff refused a physical exam stating that he already had one done by his primary care physician three to four months prior. In an appointment two weeks later, Plaintiff told Dr. Groblewski that he "was doing a lot of coke this summer. That's why I didn't get hip replacement."

On January 5, 2007, Plaintiff was referred to Lemuel Shattuck Neurology for an additional complaint involving his left upper extremity. And on January 6, 2007, Plaintiff was referred to the in-house orthopedic doctor to begin the process of evaluation for osteoarthritis by the Lemuel Shattuck Hospital, since he had not yet undergone the hip replacement surgery believed to be necessary to treat his condition. Plaintiff saw the in-house orthopedic doctor, in January of 2007, and again on March 15, 2007.

On May 13, 2007, Plaintiff was referred to the orthopedic surgeon at the Lemuel Shattuck Hospital. He received an orthopedic consult on June 28, 2007 and was referred back to the orthopedic surgeon on August 3, 2007, after confirming his interest in having the hip replacement surgery. Plaintiff was evaluated by the orthopedic clinic a fourth time on October 11, 2007. The orthopedic surgeon recommended physical therapy to strengthen Plaintiff's hip flexors at that time. Plaintiff had a follow- up appointment with the orthopedic clinic on December 27, 2007.

On October 16, 2007, Dr. Groblewski saw Plaintiff as a follow up to his appointment with the orthopedic surgeon at the Lemuel Shattuck Hospital. Plaintiff discussed his medications with Dr. Groblewski at that time, stating "I don't care about Percocet. I only care about the pain."

Plaintiff further stated that he had taken Ultram three to four times a day at the Nashua Street Jail and asked if he could have the dosage that he was receiving at the House of Correction increased to a similar amount. Dr. Groblewski agreed to increase Plaintiff's prescription for Ultram from fifty milligrams twice per day to fifty milligrams three times per day. He also increased Plaintiff's dosage of Neurontin from 400 milligrams twice per day to 600 milligrams twice per day. On November 1, 2007, Dr. Groblewski again increased Plaintiff's Ultram prescription to 100 milligrams three times per day.

Plaintiff had his first physical therapy appointment on October 18, 2007. He attended physical therapy approximately thirty times from October 18, 2007 to February 29, 2008, but he refused to participate on eight occasions.

During this time period Plaintiff was also seen by a neurologist at the Lemuel Shattuck Hospital because he was experiencing some left sided numbness and blurred vision, which he first brought to the attention of medical staff on January 5, 2007. Plaintiff had his first neurology appointment on March 5, 2007, which was followed by an MRA of the neck and head and an MRI of the head on April 20, 2007. All of the images were normal. Plaintiff also received an EMG on June 7, 2007. He attended a follow up neurology appointment on October 1, 2007 and an MRI of the neck was conducted on December 21, 2007.

Plaintiff received pain medications in various forms consistently from his re-incarceration with the Suffolk County House of Correction in November of 2006 to the present time. By way of example, as of January 2008, Plaintiff took the following medications for pain management: 100 milligrams of Ultram three times per day, 500 milligrams of Naprocin twice per day, 800 milligrams of Neurontin three times per day, and ten milligrams of Baclofen twice per day.

At an appointment on January 22, 2008, Dr. Groblewski discussed pain management with Plaintiff. At that time, Plaintiff told Dr.Groblewski that he might need Percocet to control his pain prior to hip replacement surgery. Dr. Groblewski told Plaintiff that he would speak to Dr. Carrillo, his orthopedic doctor at the Shattuck Hospital about his medications. On January 25, 2007, Dr. Groblewski spoke to Dr. Carrillo, who reviewed Plaintiff's pain prescriptions and found them to be appropriate. Dr. Carrillo indicated that she would try to schedule the surgery as soon as possible scheduled as soon as possible given the scheduling limitations. On March 24, 2008, the Plaintiff had total left hip replacement surgery.

II. Discussion

    A.    Standard of Review

Pursuant to Fed. Rule of Civ. Pro. 56(a), summary judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] In granting a summary judgment motion, the court "must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof."[3] Because the facts are not in dispute, disposition of the claims as a matter of law is appropriate.

    B.    Section 1983 Claims

Defendants contend that they are entitled to judgment as a matter of law as to count one because Plaintiff cannot establish that they acted with deliberate indifference to his serious medical needs.

---

[2] Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008).

[3] Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005).

An Eighth Amendment claim of cruel and unusual punishment based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[4] "The obvious case would be a denial of needed medical treatment in order to punish the inmate. But deliberate indifference may also reside in 'wanton' decisions to deny or delay care, where the action is recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'"[5]

"Deliberate indifference thus defines a narrow band of conduct in this setting."[6] It is insufficient to prove only that a prison official should have known of an excessive risk to an inmate's health because a reasonable person would have known. Instead, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[7]

Allegations of substandard care, even to the point of malpractice, or a plaintiff's disagreement as to the appropriate course of treatment both may suffice to present colorable claims for negligence, but they do not rise to the level of a constitutional violation.[8] Rather, to

---

[4] Feeney v. Correctional Medical Services, Inc., et. al, 464 F.3d 158, 161-62 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

[5] Id. at 162 (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).

[6] Id.

[7] Farmer v. Brennan, 511 U.S. 825, 837 (1994).

[8] Id. (citing Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981)).

violate the Eighth Amendment, the care provided must have been "so inadequate as to shock the conscience."[9]

In essence, Plaintiff makes two allegations with regard to the medical treatment provided by Defendants: (1) Defendants denied Plaintiff's requests for physical therapy and (2) Defendants prescribed an inadequate type or dosage of pain medication at various times throughout Plaintiff's incarceration. Plaintiff also makes a generalized allegation that "defendants never 'signed off' on the plaintiff's surgeries," but does not indicate the particular defendants to which this allegation is directed. Quite simply, the facts as presented on summary judgment fail to bear out these allegations.

There is no evidence to demonstrate that a significant risk of serious harm existed. Plaintiff does not allege that his condition is worse than it would have been if Defendants had provided him with the care that he believed to be appropriate. Instead, he alleges that he endured more pain than he might otherwise have if Defendants had made stronger pain medication and physical therapy available to him. Though these allegations may give rise to a plausible claim for negligence, they do not satisfy the stringent deliberate indifference standard.

Even if the facts presented would permit the inference that a substantial risk of serious harm existed, the complaint does not allege and the evidence does not suggest that Defendants in fact drew that inference. There is nothing to suggest either in the Complaint or the evidence presented on summary judgment to demonstrate that Defendants intentionally deprived Plaintiff of necessary care or that they persisted in their chosen course of care, in spite of a subjective recognition that such care was causing serious harm to the Plaintiff.

---

[9] Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

Plaintiff merely presents a conclusory allegation that "the decisions made by the defendants not to treat the plaintiff with adequate pain medication to combat the excruciating pain he was subjected to as a result of his disease, and not to schedule him for physical therapy, to treat him in lieu of operation, were arbitrarily carried out and motivated by a desire to save money, not to facilitate proper care for the plaintiff."[10] As an initial matter, this court cannot infer that the Defendants acted with deliberate indifference, in the absence of facts suggesting that these particular Defendants intentionally denied care that they knew to be necessary to prevent serious harm. More importantly, however, the evidence does not support Plaintiff's allegations. Defendants provided Plaintiff with a panoply of pain medications and increased the dosages at his request; Plaintiff received physical therapy; and Plaintiff underwent hip replacement surgery.

Accordingly, Defendants are entitled judgment as a matter of law on count one, asserting a violation of 42 U.S.C. § 1983.

### C.   Claims Under Massachusetts Declaration of Rights

Defendants next seek summary judgment in their favor on count two, alleging violations of the Massachusetts Declaration of Rights.

Article 26 of the Declaration of Rights "bars punishments which are found to be cruel or unusual in light of contemporary standards of decency which marks the progress of society."[11] An inmate claiming a violation of Article 26 must show "(1) a condition or situation which poses a substantial risk of serious harm; and (2) facts establishing that a prison official has knowledge of

---

[10] Compl. ¶ 27.

[11] Reaves v. Correctional Medical Services, 2005 WL 2439195, *7 (Mass.Super. Sep. 16, 2005) (citing Good v. Commissioner of Correction, 629 N.E.2d 1321, 1325 (Mass. 1994)).

the situation and ignores it."[12] The rights guaranteed under Article 26 and the Eighth Amendment to the federal constitution are "essentially the same" and "there is no need for separate analyses."[13] Accordingly, Defendants are entitled to summary judgment on the Article 26 claims for the reasons set forth in the discussion of the section 1983 claims.

Article 11 of the Massachusetts Declaration of Rights provides subjects of the commonwealth with "a certain remedy, by having recourse to the laws . . . ."[14] Article 11 can be characterized generally as providing a "right of free access to the courts.[15] The complaint makes no mention of any claims that could be construed as procedural due process violations that Article 11 seeks to protect.

Article 12 of the Massachusetts Declaration of Rights offers broad protection against self incrimination in criminal trials.[16] Much like the rights afforded under the Sixth Amendment, article 12 provides in part that no person shall "be compelled to accuse, or furnish evidence against himself."[17] Article 12 provides rights applicable to criminal proceedings and, therefore, has no bearing on Plaintiff's current civil action.

### D. Intentional Infliction of Emotional Distress Claim

---

[12]Id. (citing Rasheed v. Commissioner of Correction, 772 N.E.2d 1098, 1098 (Mass. 2002) (internal quotation marks omitted)).

[13]Carter v. Symmes, et al., 2008 WL 341640, at *5 (D.Mass. Feb. 4, 2008); see also Michaud v. Sheriff of Essex County, 458 N.E.2d 702, 708 (Mass. 1983) (interpreting Article 26 to be as broad as the Eighth Amendment, but not broader).

[14]A.L.M Constitution Pt. 1, Art. XXVI.

[15]Breult, 513 N.E.2d at 1281.

[16]See Commonwealth v. Austin A., 881 N.E.2d 117, 120 (Mass. 2008).

[17]Opinion of the Justices to the Senate, 591 N.E.2d 1073, 1076 (Mass. 1992).

To succeed in a claim for intentional infliction of emotional distress, a plaintiff must establish that "(1) the defendant intended to inflict emotional distress or knew or had reason to know that emotional distress would result from the conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) the defendant's actions caused the plaintiff's distress; and (4) the plaintiff's distress sustained was severe and of a nature that no reasonable person could be expected to endure."[18]

"Mere insults, indignities, threats, annoyances, petty-oppressions or other trivialities" are insufficient to establish liability for intentional infliction of emotional distress.[19] Nor is it enough "that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."[20] A defendant will only be subject to liability when his conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."[21]

Plaintiff alleges that PHS and Dr. Groblewski failed to provide him with physical therapy and prescribed inadequate pain medication at various times throughout his incarceration at SCHOC. Plaintiff also alleges generally that actions of the defendants in this case were the

---

[18] Ruffino v. State Street Bank and Trust Co., 908 F.Supp. 1019, 1049 (D.Mass. 2008) (citing Agis v. Howard Johnson, 355 N.E.2d 315, 318-319 (Mass. 1976)).

[19] Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987).

[20] Id.

[21] Id.

proximate cause of "the plaintiff's pain and suffering, emotional and physical distress and the exacerbation and deterioration of his medical condition...."[22] This court cannot conclude from these facts that the conduct of PHS and Dr. Groblewski "was extreme and outrageous, beyond all possible bounds of decency and was utterly intolerable in a civilized community."[23] The facts, as presented on summary judgment, indicate quite the contrary: that PHS and Dr. Groblewski prescribed Plaintiff a myriad of pain medications upon his request, provided him with access to physical therapy, and facilitated his hip replacement surgery.

These facts do not even seem to present evidence of negligence, much less intentional infliction of emotional distress. Accordingly, Defendants are entitled to judgment as a matter of law.

E.   Breach of Contract

Under Massachusetts common law, a third party beneficiary may enforce a contract only if it "appear[s] from the language and circumstance of the contract that the parties to the contract clearly and definitely intended the beneficiar[y] to benefit from the promised performance."[24] To properly claim status as a third party beneficiary the plaintiff must demonstrate that "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties

---

[22]Compl. ¶ 31.

[23]Ruffino 908 F.Supp. at 1049 (internal citation omitted).

[24]Miller v. Mooney, 725 N.E.2d 545, 550 (Mass. 2000) (quoting Anderson v. Fox Hill Village Homeowners Corp., 676 N.E.2d 821, 822 (Mass. 1997)) (internal quotations and alterations omitted).

. . . ."[25]  The Court analyzes the "language and circumstances of the contract for indicia of intention."[26]

Plaintiff's complaint does not allege sufficient facts to sustain a claim for breach of contract as a third party beneficiary.  Plaintiff alleges no terms of any contract and provides no assertions of fact that would give this court any indication of the intentions of the defendants in forming the alleged contract.  In fact, the complaint makes no mention of any contract or any parties to an alleged contract beyond identifying the cause of action.  Even in the face of evidence that such a contract exists, of which there is none here, rarely has a court ruled a prisoner to be a party to a medical services contract in a correctional institution.[27]

Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim for breach of contract.

IV.   Conclusion

For the foregoing reasons, Defendants Prison Health Services, Inc., and Dr. Thomas Groblewski's Motion for Summary Judgment [#70] is ALLOWED.

AN ORDER HAS ISSUED.

　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Joseph L. Tauro
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[25] Rae v. Air-Speed, Inc., 435 N.E.2d 628, 632 (Mass. 1982) (quoting The Restatement (Second) of Contracts § 302 (1981)).

[26] Oates v. Larkin, 2007 WL 4442361, at *5 (Mass.Super. Dec. 05, 2007).

[27] See Oliver v. Vose, 1991 WL 97453, at *5, n. 10 (D.Mass. May 23, 1991) ("Only one court has held that a prisoner may be a third party beneficiary to such a contract") (citing Owens v. Haas, 601 F.2d 1242 (2nd Cir. 1979)).